UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHARLENE C. BUCKLEY,               )
                                   )
             Plaintiff,            )
                                   )
      vs.                          )       Case No. 4:22-CV-100-ACL
                                   )
KILOLO KIJAKAZI,                   )
Acting Commissioner of Social Security )
Administration,                    )
                                   )
             Defendant.            )

**MEMORANDUM**

Plaintiff Charlene Buckley brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the Social Security Administration Commissioner's denial of her application

for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Buckley' severe impairments,

she was not disabled as she was capable of performing past relevant work.

This matter is pending before the undersigned United States Magistrate Judge, with

consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is

presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

**I.   Procedural History**

Buckley filed her application for benefits on May 12, 2020.   (Tr. 249.)   She claimed she

became unable to work on October 18, 2019, due to peripheral neuropathy in the bilateral upper

extremities, bilateral cubital tunnel syndrome, bilateral median focal neuropathy at the wrists,

carpal tunnel syndrome, trigger fingers, arthritis in both hands, Dupuytren's contracture, scapholunate ligament laxity, and muscle wasting.   (Tr. 270.)   Buckley was 56 years of age at her alleged onset of disability date.   (Tr. 249.)   Her application was denied initially.   (Tr. 164.) Buckley's claim was denied by an ALJ on April 22, 2021.   (Tr. 109-22.)   On December 1, 2021, the Appeals Council denied Buckley's claim for review.   (Tr. 1-4.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Buckley first argues that the ALJ erred by failing to "properly evaluate medical opinion evidence."   (Doc. 23 at 3.)   She next argues that the "RFC assessment lacks rationale describing how the evidence supports the findings."   *Id.* at 5.   Buckley also contends that the ALJ's "pain/credibility evaluation is misleading and not supported by the record."   *Id.* at 7.

## II.   The ALJ's Determination

The ALJ first found that Buckley met the insured status requirements of the Social Security Act through December 31, 2022.   (Tr. 111.)   He stated that Buckley has not engaged in substantial gainful activity since his alleged onset date.   (Tr. 112.)   In addition, the ALJ concluded that Buckley had the following severe impairments: obesity, osteoarthritis, status post carpal tunnel release and ulnar nerve decompression, cubital tunnel syndrome, status post trigger finger releases, bilateral scapholunate ligamentous instability, neuropathy, and Dupuytren's fasciitis.   *Id.*   The ALJ found that Buckley did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.   (Tr. 113.)

As to Buckley's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except never climb ladders, ropes or scaffolds; never crawl; occasionally climb ramps and stairs, and balance as that term is used in the Selected Characteristics of Occupations; occasionally stoop, kneel and crouch; frequently reach, handle and finger; avoid concentrated exposure to extremes of heat and cold and excessive vibration; avoid all exposure to work place hazards such as hazardous machinery and unprotected heights.

(Tr. 114.)

The ALJ found that Buckley was capable of performing her past relevant work as a case aide.   (Tr. 121.)   The ALJ therefore concluded that Buckley was not under a disability, as defined in the Social Security Act, from October 18, 2019, through the date of the decision.   (Tr. 122.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on May 12, 2020, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

*Id.*

## III.   Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This

"substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.      The credibility findings made by the ALJ.

2.      The plaintiff's vocational factors.

3.      The medical evidence from treating and consulting physicians.

4.      The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.      Any corroboration by third parties of the plaintiff's impairments.

6.      The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v.*

*Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).   Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

### III.B.   Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements"

of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."   *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though

the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV.   Discussion

Buckley argues that the ALJ erred in evaluating the medical opinion evidence, determining her RFC, and in evaluating her "pain/credibility."   The undersigned will discuss Buckley's claims in turn, beginning with Buckley's subjective complaints of pain.

### 1.   Subjective Complaints

Plaintiff argues that the ALJ's "pain/credibility evaluation" is "misleading" and not supported by the record.   (Doc. 23 at 7.)

As an initial matter, Social Security Ruling 16-3p[1] eliminated the word "credibility" from the analysis of subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence.   SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529.   The Rule incorporates the familiar factors from *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) that previously guided an ALJ's analysis of subjective complaints, including: objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency and intensity of the symptoms (*i.e.*, pain); (3) precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions.   *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019).   If the evidence as a whole "undermines" or "cast[s] doubt on" a claimant's testimony, an ALJ may decline to credit a claimant's subjective complaints.   *Id.*

---

[1]The revised Ruling became effective on March 27, 2017. It applies to determinations or decisions made by the Social Security Administration on or after March 28, 2016.

The ALJ is not mechanically obligated to discuss each of the above factors, however, when rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing his or her reasons for discrediting the testimony, and the ALJ's credibility assessment must be based on substantial evidence.   *Vick v. Saul*, No. 1:19 CV 232 CDP, 2021 WL 663105, at *8 (E.D. Mo. Feb. 19, 2021) (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Grba-Craghead v. Astrue*, 669 F. Supp. 2d 991, 1008 (E.D. Mo. 2009)).   On review by the court, "[c]redibility determinations are the province of the ALJ." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)).   The court defers to the ALJ's determinations "as long as good reasons and substantial evidence support the ALJ's evaluation of credibility."   *Id.*

The ALJ summarized Buckley's testimony regarding her limitations as follows, in relevant part:

> She asserted experiencing pain in both hands, joints, and shoulders, as well as difficulty sleeping.   The claimant indicated she lived in a house with her husband and spent a typical day managing her personal care, taking medication, watching television, doing household chores, resting, and making dinner.   She described difficulty lifting more than 20 pounds, sitting for longer than an hour, and using her hands.   The claimant admitted that she was capable of managing her personal care independently, preparing meals, cleaning though at a slow pace, doing laundry, washing dishes, driving, going out alone, shopping in stores for one and a half to two hours weekly, managing her finances, crafting, watching television, spending time with family and friends weekly, taking vacations, taking rides, following both written and spoken instructions, and getting along with others including authority figures.   At the hearing, the claimant indicated she had multiple surgeries, took breaks every 15 to 20 minutes and could only do data entry for about 15 minutes before needing a break.

(Tr. 114-15.)

The ALJ determined that, although Buckley's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with

the medical evidence and other evidence in the record.   (Tr. 115.)   The Court finds that the ALJ appropriately considered Buckley's subjective allegations.

After summarizing Buckley's medical treatment notes, the ALJ first stated that the record reveals that her treatment "has been generally successful in controlling those symptoms."   (Tr. 120.)   The ALJ acknowledged that Buckley had undergone hand surgeries, which suggests that her symptoms were genuine, yet noted that the surgeries were generally successful in relieving the symptoms.   *Id.*   He pointed out that Buckley reported to her treating surgeon that her numbness and tingling symptoms were significantly better, and she was released from his care in July of 2020.   (Tr. 120, 489.)   Buckley argues that, although the record notes some improvements with surgeries and medications, the ALJ failed to explain how these improvements are inconsistent with Buckley's testimony.

An ALJ may consider improvement with treatment when evaluating the claimant's subjective complaints.   *See* § 404.1529(c)(3)(v) (stating treatment for relief of symptoms may be considered when evaluating the intensity and persistence of a claimant's symptoms); *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (stating "impairments that are controllable or amendable to treatment do not support a finding of total disability") (internal quotation marks omitted).   As will be discussed in more detail below, the record supports the ALJ's finding that Buckley's symptoms improved with treatment.   The ALJ did not find that Buckley had no symptoms at all following surgery, but found that her documented improvement was inconsistent with the presence of disabling pain or limitations.   The ALJ did not err in making this finding.

The ALJ next stated that there was evidence that Buckley "has not been entirely compliant in taking prescribed medications."   (Tr. 121.)   Buckley argues that this finding lacks

support from the record, other than a single instance of Buckley forgetting to take a dosage of her Metformin.[2]

The record reveals that Buckley reported to her family nurse practitioner treating her for diabetes that she was "taking the Metformin once a day but forgets to take the 2nd dose."  (Tr. 360.)  This suggests that Buckley did not take her diabetes medication as prescribed on a regular basis, rather than on a single occasion as Buckley suggests.   The record also reveals additional instances of noncompliance with recommended treatment.   On May 18, 2020, Buckley complained of severe shoulder pain.  (Tr. 428.)   Her surgeon recommended a cortisone injection, but Buckley refused the injection, indicating that she wanted to try oral anti-inflammatory medication first.  (Tr. 430.)   Further, the record reveals Buckley was repeatedly advised regarding tobacco cessation and exercise, yet she did not follow these admonitions.   (Tr. 364-65, 489, 503, 513.)   An ALJ may properly consider a claimant's noncompliance with a treating provider's directions.  *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006).   The ALJ did not err in considering Buckley's instances of noncompliance with treatment recommendations when determining the consistency of her subjective complaints.

Next, the ALJ discussed Buckley's daily activities.   He stated that they were not limited to the extent one would expect, given her allegations of disabling symptoms.   (Tr. 121.) Buckley admits to daily activities such as preparing meals, performing household chores, driving, shopping, spending time with friends and family, engaging in hobbies, and going on vacation, but argues that the ALJ did not consider the limited pace and duration of these activities.

---

[2]Metformin is used with a proper diet and exercise program to control high blood sugar in patients with type 2 diabetes.   S*ee* WebMD, http://www.webmd.com/drugs (last visited March 9, 2023).

Though a person's ability to engage in chores or hobbies does not demonstrate an ability to work, *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000), it is proper for an ALJ to consider a claimant's activities for purposes of assessing the credibility of his claims of incapacity. *Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018); *see also Wright v. Colvin,* 789 F.3d 847, 854 (8th Cir. 2015) (noting the Eighth Circuit has found activities such as driving, shopping, bathing, and cooking were inconsistent with disabling pain); *Roberson v. Astrue,* 481 F.3d 1020, 1025 (8th Cir. 2007) (affirming the ALJ's analysis of claimant's subjective statement of symptoms where the claimant took care of her child, drove, fixed simple meals, performed housework, shopped, and handled money).   The ALJ properly found Buckley's daily activities were inconsistent with a total inability to work.

Finally, the ALJ noted that Buckley stopped working due to a business-related layoff rather than because of her allegedly disabling impairments.   (Tr. 121.)   Leaving work for reasons unrelated to an alleged disabling impairment weighs against a finding of disability. *Medihaug v. Astrue,* 578 F.3d 805, 816–17 (8th Cir. 2009); *Browning v. Sullivan,* 958 F.2d 817, 821 (8th Cir. 1992).

Buckley argues that the fact that she was laid off in January 2018 is irrelevant, because she did not allege disability until over a year later, in October 2019.   The ALJ stated that there was no evidence of a significant deterioration in Buckley's medical condition since that layoff, therefore creating a reasonable inference that her impairments would not prevent the performance of that job.   (Tr. 121.)   The ALJ did not err in considering Buckley's layoff as a factor inconsistent with her complaints of disability.   *See Van Vickle v. Astrue,* 539 F.3d 825, 830 (8th Cir. 2008) ("Thus, despite suffering from what she calls 'extreme fatigue,' Van Vickle continued working for over four years.").

In sum, the ALJ thoroughly reviewed Buckley's testimony and other evidence of record in a manner consistent with *Polaski*, and articulated specific reasons to find her symptoms and limitations were inconsistent with the record.   Because this determination is supported by good reasons and substantial evidence on the record as a whole, the undersigned must defer to it. *Julin*, 826 F.3d at 1086.

## 2.  Opinion Evidence and RFC

Buckley argues that the ALJ erred in determining her RFC.   Specifically, she contends that the ALJ failed to properly evaluate the medical opinion evidence and failed to include a narrative discussion describing how the evidence supports his findings.

A claimant's RFC is the most she can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).   It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record.   20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946.   Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician.   *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).   "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion."   *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).

The ALJ found that Buckley had the RFC to perform light work, with the following additional limitations: never crawl or climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; frequently reach, handle, and finger; avoid

concentrated exposure to extremes of heat and cold and excessive vibration; and avoid all exposure to workplace hazards, such as hazardous machinery and unprotected heights.   (Tr. 114.)   In making this determination, the ALJ assessed the consistency of Buckley's subjective complaints with the record as discussed above.   The ALJ also evaluated the medical opinion evidence.

A "medical opinion" is a statement from a medical source about what an individual can still do despite her impairments, and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work.   20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).   Under the revised Social Security regulations,[3] the agency "[w]ill not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."   20 C.F.R. §§ 404.1520c(a), 416.920c(b)(2).   Instead, the ALJ must assess the persuasiveness of all medical opinions and prior administrative medical findings[4] using a number of factors, including 1) the supportability of the opinion with objective medical evidence and explanations; 2) the consistency of the opinion with evidence from other medical and nonmedical sources; 3) the relationship of the provider to the claimant, including the length, nature and frequency of treatment; 4) the specialization of the provider; and 5) other factors, including the source's familiarity with the Social Security guidelines.   *See* 20 C.F.R. § 404.1520c.   The ALJ must explain how they considered the factors of supportability and

---

[3]The new regulations are applicable to Buckley's claims because she filed her appeal after March 27, 2017.   *See* 20 C.F.R. §§ 404.1520c, 416.920c.

[4]"Prior administrative medical findings" are findings, other than the ultimate determination on whether a claimant is disabled, about medical issues made by the consultants at a prior level of review in the claimant's current claim based on their review of the evidence.   81 Fed. Reg. at 62,564; 20 C.F.R. § 404.1513(a)(5) (2017).

consistency in their decisions but are not statutorily required to discuss the other factors.   20 C.F.R. § 404.1520c(b)(2).

Buckley argues that the ALJ did not properly articulate the "supportability" and "consistency" factors when evaluating the prior administrative medical findings of the state agency consultants.

The ALJ first stated that the state agency psychological consultants found Buckley's mental impairments were not severe, with no limitations noted in any of the B criteria.   (Tr. 121, 167, 174-75.)   Buckley does not challenge the ALJ's findings regarding the severity of or limitations resulting from her mental impairments.

The ALJ next discussed the assessments of state agency medical consultants, Nancy Caeser, M.D., and Paul Ross, D.O.   (Tr. 121, 168-70, 176-78.)   Drs. Caeser and Ross found Buckley capable of light work except frequent overhead reaching with the left upper extremity and frequent handling bilaterally.   *Id.*   The ALJ concluded that these opinions "are partially persuasive, as additional medical evidence received at the hearing level better supported the findings set forth above including additional mental and physical limitations as discussed at length throughout this decision."   (Tr. 121.)

The ALJ's decision reflects that he considered the opinion evidence of record.   Although the ALJ could have provided more detail, he did offer some explanation for his findings.   The ALJ ultimately found Buckley was *more limited* than found by the state agency medical consultants.   As such, any error in the ALJ's failure to elaborate on his analysis of the prior administrative findings was harmless.

The ALJ provided a detailed explanation for his RFC determination throughout his decision.   "The paragraph concerning the ALJ's evaluation of [a medical] opinion cannot be

read in isolation but must be read as part of the overall discussion of plaintiff's RFC assessment." *Wilcox v. Saul*, No. 4:20-CV-1285-SRW, 2021 WL 6196834, at *13 (E.D. Mo. Dec. 30, 2021) (quoting *Trosper v. Saul*, No. 1:20-CV-51-DDN, 2021 WL 1857124, at *5 (E.D. Mo. May 10, 2021)).   When read in context, as part of the overall discussion of Buckley's RFC, the Court finds the ALJ appropriately considered the medical opinion evidence in the record.

The ALJ conducted a thorough review of the medical evidence, as summarized below:

Buckley presented to orthopedist David Haueisen, M.D., on October 9, 2019, with complaints of recurrence of numbness and tingling in both hands that involved all fingers.   (Tr. 115, 401.)   She had undergone bilateral carpal tunnel release in 1985.   *Id.*   Buckely had seen Dr. Haueisen four years prior for a cyst on her right wrist that spontaneously resolved on its own; and saw him two years later for treatment of a cyst on her left wrist, which was excised on August 24, 2017.   *Id.*   Dr. Haueisen diagnosed Buckley with bilateral carpal tunnel syndrome, trigger finger, carpal instability in both wrists, and a BMI of 39.9.   (Tr. 115, 404.)   He counseled Buckley on weight loss through diet and exercise, as well as on the fact that a redo of carpal tunnel release surgery had a guarded prognosis.   *Id.*

On October 18, 2019—Buckley's alleged onset of disability date—she underwent EMG/nerve conduction studies which revealed electrodiagnostic evidence of peripheral neuropathy in the bilateral upper extremities; bilateral ulnar nerve focal neuropathy consistent with severe bilateral cubital tunnel syndrome; and bilateral median focal neuropathy at the wrists, although it was noted she had had release surgery years ago and it was possible findings would not return to normal after surgery.   (Tr. 116, 438.)   Buckley saw Dr. Haueisen to discuss the test results on October 28, 2019.   (Tr. 410.)   She complained of numbness, particularly in the ring and small fingers of both hands.   (Tr. 409.)   Dr. Haueisen recommended cubital tunnel

release surgery, followed by a re-do of the right carpal tunnel release, right ring and small trigger finger release, and a right ulnar nerve decompression in the future.   *Id.*

Buckley saw her primary care physician for follow-up regarding various issues on October 28, 2019.   (Tr. 116, 360.)   She reported that she takes Metformin once a day, but forgets to take the second dose.   *Id.*   Her blood sugar was high when she checked it the other day, however she reported she had eaten cake and ice cream.   *Id.*   Buckley was diagnosed with hyperglycemia, prediabetes, and neuropathy.   (Tr. 116, 361.)   She was continued on her medication, and was counseled on a diabetic diet and regular exercise for weight loss.   *Id.*

On November 12, 2019, Dr. Haueisen performed a "re-do right carpal tunnel release," trigger finger releases in the right ring and small fingers, and right ulnar nerve decompression. (Tr. 116, 433.)   Buckley was noted to be doing well with good improvement in her symptoms of numbness and tingling on November 26, 2019.   (Tr. 116, 414.)   On December 11, 2019, Buckley reported 90 percent resolution of her numbness, though she complained of occasional clicking, pain with flexing the right finger, and some shooting pain in the wrist.   (Tr. 117, 417.) Dr. Haueisen noted that Buckley had some ongoing carpal instability that he could try to correct with ligament repair, but she would likely be out of work for months.   (Tr. 419.)   Buckley asked whether she should go on disability due to her multiple hand problems, and Dr. Haueisen responded that this was a "judicial decision," and that "many individuals can function fine with some carpal instability."   (Tr. 419.)   On January 8, 2020, Buckley reported that she was overall doing well, and the numbness was "overall much better now," although she still had some aching pain about the ring finger that was worst in the evenings.   (Tr. 117, 420.)   She still had some mild weakness adducting the right and small fingers together, but overall she had good strength,

and improved grip strength.   *Id.*   Dr. Haueisen found that she was sufficiently recovered, and scheduled the left revision surgery.   *Id.*

On February 10, 2020, Buckley underwent "re-do left carpal tunnel release," and left ulnar nerve decompression.   (Tr. 117, 431.)   On February 24, 2020, Dr. Haueisen found she was overall doing well, although she reported a little thickening in her palm in the ring finger axis.   (Tr. 117, 425.)   Dr. Haueisen noted that Dupuytren's disease is typically seen in individuals of Northern European origin, and Buckley indicated that she was of German origin. *Id.*   On examination, Buckley had full elbow range of motion, some mild early Dupuytren's fasciitis in the distal palms of both hands, and well-healed incisions.   (Tr. 117, 426.)   Dr. Haueisen diagnosed her with left cubital tunnel, bilateral carpal tunnel, and trigger finger of the right little finger.   *Id.*   She was given range of motion exercises and was instructed to follow up in six to eight weeks.   *Id.*   When Buckley returned on May 18, 2020, she was doing well and her numbness and tingling had resolved.   (Tr. 118, 428.)   She reported a tendency to drop things because her joints get sore, not due to numbness; and complained of diffuse aching pains throughout her fingers.   *Id.*   Buckley had developed severe left shoulder pain, which particularly bothers her when she tries to sleep at night.   (Tr. 118, 428.)   X-rays were unremarkable.   (Tr. 487.)   Dr. Haueisen recommended a cortisone injection , but Buckley refused, noting she wanted to try anti-inflammatories instead.   (Tr. 118, 428.)

At a June 23, 2020, primary care follow-up appointment, Buckley reported "everything seems to be going relatively well."   (Tr. 118, 474.)   She complained of generalized aches and pains in most every joint, and indicated her fingers tend to be a little stiff and sore early in the morning and later on in the day.   *Id.*   Buckley was not taking "much in the way of anti-

inflammatory agents."   *Id.*   She was diagnosed with "probable osteoarthritis," "doubt rheumatoid arthritis."   (Tr. 475, 118.)   Laboratory studies were consistent with prediabetes.   *Id.*

On July 22, 2020, Buckley saw Dr. Haueisen, at which time she noted good improvement of her numbness and tingling.   (Tr. 118, 487.)   Her shoulder felt much better now, and she did not feel it was symptomatic enough to require a cortisone injection.   *Id.*   She indicated that she gets some aching pains somewhat diffusely through her fingers, but no triggering of the fingers. *Id.*   Her primary care doctor had tested for rheumatoid arthritis, and this was negative.   *Id.*   On examination, Buckley had a normal station and gait, and was able to overhead elevate her left shoulder well without any pain or motion restriction.   (Tr. 119, 488.)   She had some mild node formation in multiple fingers of both hands, but no osteoarthritic enlargements around any of the joints and she was able to make an overall good fist.   *Id.*   Buckley had mild tenderness about the arthritic DIP joints.   *Id.*   Her grip strength was overall well-maintained bilaterally.   *Id.*   Dr. Haueisen diagnosed Buckley with left cubital tunnel syndrome and left carpal tunnel syndrome. *Id.*   He instructed her to continue using Mobic5 for osteoarthritis of the hand, and follow-up on an as-needed basis.   (Tr. 119, 489.)

The ALJ concluded from this evidence that Buckley's surgeries were generally successful in relieving her symptoms.   (Tr. 120.)   This conclusion is supported by the medical record.   Notably, Buckley was released to follow-up only as needed with Dr. Haueisen in July 2020, and never returned for any further treatment.   Further, Dr. Haueisen did not ever impose any permanent work-related restrictions.

---

[5]Mobic is an anti-inflammatory drug indicated for the treatment of arthritis.   S*ee* WebMD, http://www.webmd.com/drugs (last visited March 9, 2023).

Buckley argues that the ALJ's RFC determination is erroneous because there are no opinions supporting it, and the ALJ instead relied on his own interpretation of the medical evidence.

The Court recognizes that an ALJ "may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).   The Eighth Circuit has held that the "interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted).   In this case, the ALJ performed an extensive review of relevant evidence, including Buckley's substantial medical records, before concluding she was capable of a limited range of light work.   This analysis was entirely consistent with the requirements of SSR 96-8p and other applicable regulations.   The ALJ assessed objective medical evidence, carefully described various objective findings, and cited numerous sources of objective medical evidence across Buckley's many physician visits and tests.   The ALJ's RFC determination is *more restrictive* than that of the prior administrative findings by Drs. Caeser and Ross.

The undersigned finds that the RFC determination is supported by substantial evidence on the record as a whole.   In his discretion, the ALJ made an RFC finding that did not precisely reflect any of the medical opinions of record.   *See Martise*, 641 F.3d at 927 (ALJ is not required to rely entirely on one particular physician's opinion or choose between opinions).   He considered Buckley's lingering hand symptoms when limiting her to only frequent reaching, handling, and fingering.   The ALJ also considered Buckley's testimony regarding her daily activities when determining her RFC.   Specifically, Buckley testified that she was capable of managing her daily care, preparing meals, completing household chores, driving, leaving the house unaccompanied, shopping in stores weekly, crafting, taking vacations, and spending time

with family and friends.   He points to other evidence in the record that is supportive of her application for benefits, but she has failed to demonstrate that the ALJ's decision was outside the available "zone of choice."

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of March, 2023.